### EASLEY v. GILL.
### No. 1336.

Court of Civil Appeals of Texas. Eastland.
Nov. 16, 1934.

Rehearing Denied Dec. 14, 1934.

Smith & Eplen, of Abilene, and Geo. T. Wilson, of San Angelo, for appellant.

Davidson, Doss & McMahon, of Abilene, for appellee.

LESLIE, Justice.

G. W. Gill brought this suit on two vendor's lien notes in the sum of $600 and $2,300, respectively, which were secured by vendor's lien on 160 acres of land, being the east one-half of fractional section No. 27, containing 320 acres, El Paso county school lands, league 317, situated in Fisher county, Tex. Easley, defendant below, appellant here, owed Gill a note in the principal sum of $3,427.27, dated February 14, 1929, the payment of which Easley secured by placing said two vendor's lien notes with Gill as security. The $3,427.-27 note stipulated that the two vendor's lien notes were security for same, and the note contained the further provision granting Gill the right to sell the collateral notes at public or private sale, with or without notice, and apply the proceeds to the indebtedness. This power of sale was later exercised, and at the private sale, after notice, Gill bought the two notes for $1,500. He then brought this suit upon the same. Easley answered by alleging the usurious nature of the $3,427.27 note; he alleged that he borrowed $2,704.76 from Gill and executed his note for $2,904.76 providing for interest at the rate of 10 per cent. per annum from date until paid, and that this note with its accrued interest was renewed in the execution of the $3,427.27 note.

He alleged that a $200 bonus was added in the face of the $2,904.76 note. Gill denied all charges of usury, and alleged that the various notes executed by Easley to him were separate and distinct transactions, and that no parts of them were ever merged until the unpaid portions of them were incorporated in the $3,427.27 note.

The trial was before the court without a jury, and at the conclusion of the testimony judgment was rendered in favor of the plaintiff for $3,160, the amount of the two vendor's lien notes, and the defendant was denied any relief. There are no findings of fact or conclusions of law in the transcript. There is a statement of facts in the record, and, by two propositions briefed, Easley contends that the court erred in not allowing him certain credits on the principal amount ($2,704.76) which he borrowed from Gill, and which was carried forward in the $3,427.27 note, and in this respect he contends that the court erred in not applying these credits to the two vendor's lien notes in this suit "to the same extent as he could have urged in a suit on the original note ($3,427.27) to secure which the Vendor's Lien notes were pledged."

To make clear our conclusions on the merits of this appeal, we regret that it becomes necessary to make a rather extended statement of the material facts involved. It is also necessary to some extent to make repetition of certain matters that their logical connection with other facts may readily appear. The substance of the material facts is as follows:

W. B. Campbell and others executed and delivered to appellant, Easley, a warranty deed dated November 15, 1924, to the south one-half of section No. 26, and fractional section No. 27, each containing 320 acres, El Paso county school lands, league 317, situated in Fisher county, Tex. The consideration was the assumption by Easley of lien indebtedness against the land held by the Federal Land Bank of Houston and the National Bank of Commerce of Fort Worth, Tex. On December 1, 1924, Easley conveyed these lands by quarter sections to J. F. Fraser. For the east one-half of fractional section No. 27 he received, among other considerations, two vendor's lien notes, one for $600 and the other for $2,300, due, respectively, November 15, 1929, and 1930. These are the notes upon which the instant suit was filed. In fact, Fraser, together with other considerations given, executed for each quarter section a set of six vendor's lien notes payable to the order of Easley. On March 20, 1925, each

quarter was reconveyed by Fraser to Easley in separate conveyances. Each reconveyance was subject to the set of six vendor's lien notes against it, but Easley assumed the taxes.

The debt to the Federal Land Bank amounted to approximately $5,645.62, and to the National Bank of Commerce, $7,037.05.

To save his land from sale under these debts, Easley negotiated with Gill for financial assistance. According to his allegations, on November 29, 1924, he borrowed $2,704.76, executing his note for $2,904.76, with interest from date. He also alleges that a $200 bonus was included in this note which made it a usurious contract. On February 14, 1925, he executed a note to Gill for $5,645.62; February 16, 1925, a note for $1,500; and June 29, 1925, a note for $200.

Easley supplemented the $2,704.76 with $4,132.29 of his own funds and paid off the $7,037.05 due the National Bank of Commerce. In this three-cornered transaction, and for the purpose of securing the payment of the $2,904.76 note, the bank transferred its debt and lien to Gill. As evidence of Gill's loan to Easley, the latter executed the $2,904.76 note of date November 29, 1924.

Next C. W. Gill loaned Easley $5,645.62 to take up the Federal Land Bank debt. Easley executed a note of date February 14, 1925, payable to the order of Gill for that amount, and bearing 10 per cent. per annum interest from date, etc. Upon receipt of this amount, this bank transferred its lien to C. W. Gill.

After the above amounts were advanced by Gill to Easley, Gill received the notes executed for the same and entered them on the debit side of the ledger, and the payments thereafter made on them by Easley were entered on the credit side.

After the two banks transferred their liens to Gill to secure his advancements to Easley, the latter, to further secure the same, transferred to Gill the four sets of vendor's lien notes received by him from Fraser and subject to which he permitted Fraser to reconvey the four quarter sections of land back to him. By an arrangement between Gill and Easley, the latter was to go out and place, or pledge, the four sets of vendor's lien notes and apply the proceeds derived therefrom to the payment of Easley's several obligations to Gill, whereupon Gill was to release, to the pledgee of any set of such notes, any and all liens acquired by him and existing against any particular quarter section of land securing the notes thus disposed of. The pledgee

would in turn become the holder of the first lien against the land so released.

Pursuant to the above arrangement, Easley borrowed $3,000 from E. N. Kirby and secured the same by the vendor's lien notes against the southwest one-quarter of section No. 26. On receipt of this money by Gill, he released the bank liens, etc., thus causing the loan from Kirby to Easley to be secured by a first lien on that quarter section of land. This $3,000 was applied by Easley on his personal note to Gill for $5,645.62, leaving an unpaid balance of $2,645.62.

June 5, 1925, Easley borrowed from C. D. Lindley $3,330 cash and executed his personal note therefor and secured its payment by some of Fraser's vendor's lien notes on the southeast one-quarter of section 26. With this Easley paid off his $1,500 note to Gill, and, by agreement with Gill, $1,830 was utilized by Easley for operating expenses. Gill thereupon released liens against this quarter section of land making Lindley the holder of the first lien thereon.

In a second deal with Lindley, Easley borrowed $2,700 executing his personal note therefor of date June 20, 1925. Fraser's vendor's lien notes against the west one-half of said fractional section were put up as collateral. With this $2,700 Easley took up the $200 note to Gill, same amounting to $236.17, and applied the balance of $2,463.83 to the $2,645.62 balance remaining unpaid on the note by which funds were borrowed to pay the Federal Land Bank. When so applied, about $181.75 remained unpaid. This amount of that principal, plus unpaid interest accruing on other obligations owed by Easley to Gill (disregarding the note for $2,904.76), amounted on January 20, 1927, to $427.76. On that date Easley paid Gill $485, which discharged this $427.76, leaving a balance due Easley of $57.24 to be applied on the other and only remaining indebtedness of Easley to Gill, viz., the indebtedness evidenced by the $2,904.76 note.

This brings us to a consideration of the legal obligations of Easley to Gill by virtue of the $3,427.27 note which Easley contends is a renewal of a former note executed by him to Gill for $2,904.76, upon which he claims to have received but $2,704.76, the last-mentioned note containing a $200 bonus, and bearing 10 per cent. interest from date, rendering it usurious. Easley further alleged that, having "retired and paid in full" all notes except the one for $2,904.76, he made another payment of $588 which he "supposed, under his understanding, was to be applied on

the note for $2904.76. That on or about February 14, 1929, the defendant Easley executed a new note for the principal sum of $3427.27; * * * that said note was executed for the purpose of renewing the *principal and interest* due under the original $2904.76 note." (Italics ours.) The appellant alleges additional payments on this particular obligation as follows: April 25, 1929, $1,494.86; November 7, 1929, $111.11. These payments, plus the $57.24 due Easley from Gill as above noted, aggregate the sum of $2,251.21. After alleging these particular payments on that obligation whereby he received $2,704.76, the appellant Easley further alleges: "That the total amount of principal for which defendant was obligated, whether it be considered as evidenced by the original note, or by the renewal note, was $2,904.76 ($2,704.76). That after deducting the total payments of $2,251.21, defendant (Easley) is now indebted on said note to the plaintiff in the amount of $453.55. For this amount he confesses judgment and pleads no objection to the right of the plaintiff (Gill) to recover on the two Vendor's Lien notes upon which plaintiff has declared in his petition."

The foregoing statement reflects in substance the appellant's answer, and his testimony appears to be consistent with the same. Upon the case as made, and under all the testimony and the pleadings, a proper application of the law leads to the following conclusions:

The appellant, Easley, admits that Gill, by his foreclosure under the power of sale contained in the $3,427.27 note, purchased and acquired good title to the two notes in suit. In conceding this Easley recognizes the rule that a sale of property under a mortgage with power of sale passes the title, notwithstanding part of the mortgaged debt is collectable and a part not collectable, as in the case of a usurious debt under our statute, the unpaid collectable part of the principal sum actually borrowed being sufficient to support the sale, although the stipulation for unlawful interest is void. Hemphill v. Watson, 60 Tex. 679; Goldfrank, Frank & Co. v. Young, 64 Tex. 432; Price v. McAnelly (Tex. Civ. App.) 287 S. W. 77; Chambers & Co. v. Little (Tex. Civ. App.) 21 S.W.(2d) 17.

Further, the appellant Easley states in his brief presenting this appeal that "appellant is not claiming any right by way of penalty in this suit, but is asserting that he has a right to offset his credits as against the principal amount which he borrowed from the appellee."

By what has gone before it is seen the appellant, by express pleadings, admits he obtained in the first loan $2,704.76 in cash. His greatest claim by way of payments on this loan amounts to the sum of $2,251.21. Therefore, if this last sum be deducted from the $2,704.76 received by Easley, we have the sum of $453.55, the remaining unpaid portion of the original principal actually borrowed, and the appellant by his pleadings invited the trial court to render judgment against him for this $453.55 with foreclosure of lien. From this it appears that, if the borrowing of the $2,704.76, and the execution of the $2,904.76 note, or the renewal note of $3,427.27, constituted a contract usurious in nature, no interest of any kind has been paid on it; that is, neither the $200 bonus, nor any part of the 10 per cent. interest per annum provided for in the notes, has been paid.

It necessarily follows that, if Easley has paid Gill no usurious interest, he can recover no penalty. His pleadings disclaim any intention to recover "penalty," and, after a careful examination of his pleadings from every standpoint, we conclude that he makes no specific allegations whatever of having at any time paid Gill any amount of money by way of usurious interest. To recover the penalty, or double the amount of such interest paid, the payment thereof must be specifically alleged. The burden is on him who seeks to recover the same to specifically allege the payment of usurious interest and the amount thereof and prove the same. R. S. 1925, art. 2010, subd. 12; arts. 5071, 5073, and 5074; Lone Star Finance Corporation v. Hackworth (Tex. Civ. App.) 74 S.W.(2d) 707; Rosetti v. Lozano, 96 Tex. 57, 70 S. W. 204. The appellant's pleadings negative the fact of his having paid usury.

The appellant's testimony is in harmony with his pleadings, and, taking the application which he makes of his payments on his various debts to Gill, it does not appear as a fact that he has paid either the bonus or the usurious interest.

Standing alone, there is no contention that there was any usury in the $5,645.62 note by which Easley obtained funds from Gill to take up the Federal Land Bank note, nor that the $1,500 note or the $200 note by Easley to Gill was tainted with usury. If there were any grounds for such contention, the trial court has found against the validity of such claim. The pleading and testimony of Gill are that all the transactions between him and Easley were independent of each other. It follows that, if any one of the Easley notes to Gill had been tainted with usury, that taint did not extend to the other notes, especially the three above, which admittedly, and under the testimony, called for legal interest.

Neither does the appellant, Easley, in any respect present a suit or cross-action for overpayment of his debts to Gill. He pleads and testifies he paid in full the $5,645.62 note, the $1,500 note, and the $200 note. He also pleads and testifies that he paid only $2,251.21 on the $2,704.76 loan by Gill. Deducting the $2,251.21 from the $2,704.76 he arrives at the $453.55 for which he admits liability. In insisting on credit for the payments amounting to $2,251.21 only, the appellant passes over the fact that, when Gill bought in the two collateral notes he paid $1,500 for them, and this $1,500 was as much a payment applicable to his indebtedness as any other payment entering into the $2,251.21. Hence, as elsewhere stated, there are no pleadings warranting any other judgment than that rendered.

As a cross-action for penalty, the appellant's suit does not meet the requirements of article 5073, R. S. 1925, as that article has been construed in the decisions. Rosetti v. Lozano, supra.

Equally as certain this is not a suit for overpayments made to Gill. That is, it is not a suit to recover the difference between $453.55, the balance which the appellant admits he owes appellee, and the $1,500 obtained for the appellant's two collateral notes. Price v. McAnelly (Tex. Civ. App.) 287 S. W. 77.

As before stated, this is not a suit on the note for $3,427.27 which is alleged to be a usurious contract, in that it contained a $200 bonus charge and interest at the rate of 10 per cent. per annum, etc. This suit is simply on the two vendor's lien notes, which no one contends are tainted with usury. Unlike the notes in suit in the case of Lindley v. Easley (Tex. Civ. App.) 59 S.W.(2d) 930, where suit was on the collateral notes as such, and no greater recovery could be had by plaintiff than the legal debt for which they were collateral, the notes here in suit are owned by Gill. Appellant, Easley, disclaims "any right by way of penalty in this suit," but he says he is asserting the right to offset his credits as against the principal amount which he borrowed from the appellee, viz., the sum of $2,704.76. Since there are no specific allegations and proof of the payment of any amount of usury, there is nothing to offset by way of such credit on the notes involved in this suit. If the note for $2,904.76, or its renewal in the sum of $3,427.27, be usurious contracts under article 5071, R. S. 1925, the fact of such usuri-

ous nature could not be any defense to the two notes declared upon in the instant suit. Whether the usurious nature of said contracts, or notes, would be a defense to the payment of any interest on the $2,904.76 note, or its renewal in the $3,427.27 note, is a question not before us, since this is not a suit on the latter note.

For these various reasons the appellant's contentions are overruled, and the judgment of the trial court is affirmed.