**MOUTOS**

v.

**SAN SABA COUNTY PEANUT GROWERS ASS'N.**

**No. 10229.**

Court of Civil Appeals of Texas. Austin.

May 19, 1954.

William C. McDonald, San Angelo, for appellant.

O'Neal Dendy, San Angelo, for appellee.

GRAY, Justice.

Appellee sued appellant on a sworn account, for interest and an attorneys' fee. Appellant answered by special exceptions, a general denial and special pleas that there was absent a necessary party defendant; that the cause of action was barred by the two year statute of limitation, and that no recovery could be had on the cause of action alleged because of the statute of frauds, Art. 3995, Vernon's Ann. Civ.St.

The evidence shows that appellant owns a farm in San Saba County near the town of Richland Springs; that he had pecan trees, hogs and other livestock on the farm and that peanuts were planted thereon. Appellant operated the farm by agents, servants or employees and had done so for some years prior to 1950.

Appellee operated a feed and merchandise store in the town of Richland Springs and prior to and for some time since 1950, had sold feed and supplies for appellant's farm and livestock. Such feed and supplies were usually delivered to appellant's agents, servants or employees but were charged to his account in keeping with his instructions and statement that he would pay for the same. At various times appellant made payments on the account. In October, 1950, Roy Scott went upon the farm at which time there was an unpaid balance for feed and supplies furnished to Pete Manous who had been on the farm

prior to that time and who was replaced by Roy Scott. The jury found this balance to be $28.50.

R. E. Pierce, the manager of appellee's store, testified that appellant brought Roy Scott to the store, introduced him, said he was going to be on the farm and was going to feed hogs and farm. And further that appellant told him (Pierce) to let Scott have what he wanted and "send me the bill for it." It appears that Scott moved to the farm from San Angelo and was a stranger to Pierce.

Feed and supplies were delivered to Scott and charged to appellant who thereafter made payments on the account.

Roy Scott testified that appellant told him to get what he needed for the livestock and for farming, and that he introduced him to R. E. Pierce at the store. He examined the account sued on, said he got the items listed thereon and used the same to feed the livestock on the farm and for other uses there.

It appears that during the fall of 1951, appellant and Roy Scott had disagreements and severed their relations. It also appears that during the fall of 1951, appellant and Mr. McDonald, an attorney, came to appellee's store. With reference to this visit R. E. Pierce testified:

"A. Mr. Moutos and Mr. McDonald came in the office and I seen them and I was busy in the back. I got through and I went up and thought someone wanted to see me. When I got in there McDonald was sitting at the desk and had all of Moutos' bills spread out on the desk and he went through the whole thing, and when he got through, he got the amount of the bills and he said, you folks needn't worry about Gust's account; as soon as he gets through with a suit, he will take care of the whole thing.

"Q. Was Gust present when he made that statement? A. Yes, sir.

"Q. Did Gust say anything to the contrary? A. No.

"Q. Did you see Gust after that in your office? A. Yes, sir.

"Q. That was January 29, the date of the $300 check? A. Yes, sir.

"Q. Tell the gentlemen what happened on January 29, 1952, with reference to the account. A. Well, we had been sending him statements; he came in the office the latter part of January and he said he wanted to pay some on his account and I asked him, my wife did, how much he wanted to pay, and he said he wanted to pay $300; so she went ahead and made out the check—

"Mr. McDonald: Were you present at that time?

"Witness: Yes, sir.

"Mr. McDonald: Go ahead.

"Witness: And I asked him after she got it made out, when he would take care of the rest of it; it was overdue and had been running so long, and we needed it; he said, well, I am short on money and as soon as the Roy Scott deal is settled, I will take care of the rest of it. I said, well, in a case like that, we will try to help you and take care of it."

A check for $300, dated January 29, 1952, payable to appellee and signed by appellant was introduced in evidence. It shows to have been duly paid and appellant's account was credited with the amount thereof leaving a balance of $974.75, the amount sued for. This check bears a notation "Payment on Peanut Seed and fertilizer."

Mrs. R. E. Pierce testified that she was bookkeeper for appellee and he had kept its accounts and records for the past nine years; that appellant first opened a charge account with appellee in 1947; that he had been a customer and on the books of appellee since that time, and that during such time he had either brought or sent his checks to the store to pay his account. She also corroborated R. E. Pierce as to the visit of McDonald and appellant to the store, the statements made by McDonald,

the giving of the $300 check by appellant and his statement then made that as soon as the Roy Scott matter was settled he would pay the balance of his account.

R. E. Pierce testified that he did not have written authority from appellant to charge his account with feed and supplies furnished to Roy Scott and that

"The first time I ever knew anything was wrong, any hold up in it, was along the latter part of June, I think it was; he came in and said, Roy's supposed to plant peanuts and it is getting might late; don't sell him any peanut seed or fertilizer unless I give you a written order. When he came to get the peanut seed I told him he would have to have an order and he brought one."

The order signed by appellant is dated June 9, 1951, but is not limited as to amount, is addressed to appellee and states:

"Please let Roy Scott have peanuts to plant and charge to me. Have Mr. Scott sign for them; Yours, Gust Moutos."

Appellant resided in San Angelo, had a business there and made such visits to his farm as apparently he deemed advisable.

It appears that appellant's disagreement with Roy Scott was settled; that appellee forwarded statements to him and that appellee finally received a letter from Mr. McDonald to appellee saying that appellant did not owe the account. Thereafter appellee filed this suit on the account which runs from September 9, 1950, to August 20, 1951. Appellee's first amended petition, upon which it went to trial, was filed October, 24, 1953. Appellant states in his brief that the original petition was filed February 18, 1953. However appellee alleged that by reason of the statements made in the fall of 1951, and on January 29, 1952, appellant is estopped to plead the two-year statute of limitation and thereby defeat a recovery by appellant of any part of the account; that it believed such statements, relied on them, and but for such statements it would have filed its suit prior to the expiration of two years.

In answer to special issues the jury found that appellant authorized appellee to charge to his account feed and farm supplies furnished to Pete Manous, and to Roy Scott; that on or about January 20, 1952, appellant represented and agreed with appellee that he would pay the account as soon as the disagreements with Roy Scott were settled; that appellee relied on such representations and agreements, and that if such agreement had not been made appellee would have filed suit for the collection of the account prior to September 9, 1952. The jury found the amount due on the account and that $325 would be a reasonable fee for appellee's attorney for filing the suit and trying the case.

Upon the jury's findings the trial court rendered a judgment awarding appellee a recovery for the amount due on the account but denied any recovery of an attorney's fee.

Appellant here presents seven points which are to the effect that: the trial court erred in overruling (1) his plea that Roy Scott is a necessary party defendant; (2) his plea of limitation of two years; (3) his plea that any recovery by appellant is barred by the statute of frauds since appellant is being held to answer for the debt and default of another without having agreed in writing to so answer; (4) his motion for instructed verdict because the testimony shows that the statute of frauds (Art. 3995, supra), bars any recovery by appellee; the trial court erred (5) in not holding as a matter of law that appellee is precluded from recovery because of Sec. 2 of Art. 3995, supra; (6) in not granting a new trial because the jury received new, additional and unsworn evidence by the closing argument of appellee's counsel, and (7) in refusing to set aside the verdict of the jury, since it appeared that such verdict was contrary to the evidence.

Appellee presents one cross-assignment wherein he complains that the trial court erred in refusing him recovery of an attorney's fee.

Appellant says the evidence shows that the merchandise was sold and delivered to Roy Scott; that he did not orally or in writing authorize Roy Scott to purchase the same and charge it to his account and did not so authorize appellee, for which reasons Roy Scott owes the account and is a necessary party defendant to this cause.

■ We have referred to the jury's findings, the judgment rendered and the evidence in support thereof, but we have not referred to appellant's testimony conflicting therewith. Suffice it to here say that the evidence presented an issue of fact, that there is evidence to support the jury's findings and that we are bound thereby. Calhoun v. Baize, Tex.Civ.App., 114 S.W.2d 634; 3–B Tex.Jur., Sec. 939, p. 449.

■ Appellee alleged that appellant owed the account. Appellant denied this and said that Roy Scott is the debtor. There is no contention that the account is owed jointly by appellant and Roy Scott, or that a part only is owed by appellant on any alleged contingency. The only issue is the individual liability of appellant. Under these conditions appellant is the only necessary and indispensable party defendant and a final decree can be entered determining this issue. Jones v. English, Tex.Civ. App., 235 S.W.2d 238, error dism. If, as appellee testified and the jury found, Roy Scott was authorized to purchase the merchandise for appellant and appellee was authorized to charge the same to appellant's account then appellant's liability would be the same as if he had made the purchases in person, on the other hand if Roy Scott was not an authorized agent but made the purchases for his own account then under appellant's contention he would not be liable for the debt absent any written agreement to be bound. However the jury found the facts to be otherwise. The agent of a disclosed principal is not a necessary party to an action against the principal. Rifkin v. Overbey, Tex.Civ.App., 171 S.W.2d 175, error ref. w. o. m.

■ It is well established that a person by words or conduct, or by both, may estop himself from pleading limitation. Panhandle Const. Co. v. Hood, Tex.Civ.App., 114 S.W.2d 632, error ref.; 28 Tex.Jur., Sec. 149, p. 246. In McNeese v. Page, Tex. Civ.App., 29 S.W.2d 489, 493, error dism., the Court said:

"In 10 R.C.L. 835, mention is made of situations where estoppel may be urged against the plea of limitation, as follows: Where an agreement is made 'that a claim is to abide the issue of a suit on another claim, or any agreement whereby the creditor is lulled into security and thereby delays action, is held to create an estoppel barring the debtor from relying on the statute.' "

■ The jury found that appellant owed the account and that he made the agreement to pay the same as noted, supra. Thus appellee was led into inaction as found by the jury and appellant was estopped to plead limitation. Kraus v. Morris, Tex.Civ.App., 245 S.W. 450.

Appellant contends that the merchandise was purchased by, and delivered to, Roy Scott individually; that Roy Scott owes the account, and that because he did not authorize appellee in writing to charge the same to his account Sec. 2 of Art. 3995, supra, precludes any recovery by appellee— Points 3, 4, and 5, supra.

■ The jury findings, supra, which we hold are supported by the evidence, are contrary to appellant's contention. These findings establish that the credit was extended to appellant, that the merchandise was purchased for him and that the account is his primary obligation for which he, and not Roy Scott, is liable. In such event the statute of frauds has no application. Shahan-Taylor Co. v. Foremost Dairies, Inc., Tex.Civ.App., 233 S.W.2d 885, error ref., n. r. e.

Appellant says that a new trial should be granted because during his closing argument appellee's counsel pointed to a stack of books and records on the counsel table and stated to the jury: "That the tickets are there, and they show to whom

the merchandise was charged." Upon objection of counsel for appellant the trial court instructed the jury to disregard the argument complained of. It appears the books and records had not been introduced in evidence.

■ The argument quoted by appellant does not purport to say that the tickets show the merchandise was in fact charged to appellant. However the testimony of R. E. Pierce and his wife was that the merchandise was purchased by and delivered to Roy Scott and was charged to the account of appellant. It was appellant's contention that Roy Scott was liable for the merchandise; that he (Moutos) is not liable therefor and that it was charged to his account without authority. Under this position of the parties before the jury the argument was not of such nature that its harmful effect, if any, could not be removed by an instruction. Under the facts it cannot be said that injury resulted to appellant by the argument. Federal Underwriters Exchange v. Bickham, 138 Tex. 128, 157 S.W. 2d 356.

What we have already said is sufficient to show that the jury's verdict is supported by the evidence, for which reason appellant's point 7 does not present error.

Appellee says that the trial court erred in not awarding him a recovery of an attorney's fee in the amount found by the jury. This claim for an attorney's fee is based on the provisions of Art. 2226, Vernon's Ann.Civ.St.

R. E. Pierce testified that he learned in January 1953, that the disagreement between appellant and Roy Scott had been settled and that he then "started prosecuting this suit." He further testified:

"Q. Did you write Gust any letters before you filed suit? A. Yes, sir, two or three.

"Q. Did you get an answer? A. No, sir.

"Q. Did you finally put it in the hands of an attorney for collection? A. Yes, sir.

"Q. When and where was the first time that you knew Gust Moutos was denying any item of this account; when and where was the first time you learned from Gust he was disputing any thing in this account? A. I think it was in February we had a letter from Mr. McDonald that said Moutos didn't owe it.

"Q. February of this year, 1953? A. Yes, sir.

"Mr. Dendy: That is all."

In any event the evidence shows that more than thirty days had elapsed between presentment of the account and the time judgment was recovered. Gateley v. Humphrey, 151 Tex. 588, 254 S.W.2d 98.

There was testimony before the jury that for the work done in this proceeding $350 would be a reasonable attorney's fee. The jury found such fee to be $325.

■ Appellee argues that the feed and supplies furnished to appellant are included within the meaning of the term "material" as used in Art. 2226, supra. The statute being penal in its nature must be given a strict construction and therefore we think that the feed and supplies in question here cannot be included within its meaning. Davenport v. Harry Payne Motors, Inc., Tex.Civ.App., 256 S.W.2d 245.

■ Appellee does not contend that he is entitled to recover an attorney's fee under the 1953 amendment of the statute providing for the recovery of an attorney's fee in "suits founded upon a sworn account or accounts". The cause of action accrued prior to the effective date of the amendment (in fact prior to its passage) and appellee is not entitled to the benefits thereof. Chastain v. Cooper & Reed, Tex. Sup., 257 S.W.2d 422.

The judgment of the trial court is affirmed.